Our second case is number 23-1367 Ingenico Inc. v. IOENGINE I think those are the key aspects of my presentation. I just wanted to point out that the document that the district court relied upon was a single-page document. It was put in front of the jury, and there was testimony about it. And also that README file, which had screenshots that showed how the upgrader actually worked, was testified about by IOENGINE's own expert. And he specifically testified that those screens and the use of that would teach a person of ordinary skill in the art to make and use the invention. And in fact, there are no further questions. I have a question. Yes? On the estoppel question, do you agree with what your friend said, that the only discussion or use of the actual device that was on sale was holding it up? No discussion of what it did or whatever? There was an enormous amount of discussion about what it did. You're talking about the disk on key? Yeah. Yeah, so at trial, Mr. Guyer, who was Ingenico's expert, went through exactly what it did, looked at all the documents that described what it did. I'm talking about use of the device itself, the import of showing the jury the device. Yes. We couldn't actually run the upgrader program because there was no upgrade to be had. In other words, this was a- Did you have testimony that went along with the device to say what it did and how it behaved? Absolutely. We had three witnesses from the people. We had Mr. Harkavy, Mr. Eleazar. Would you have some sort of record sites to go along with the evidence? Yes, Your Honor. My colleague will help me with that. But in our, there we go. Yes, so we have on our page six of our brief, we talk about the testimony of three former M-Systems employees. And I can give you the appendix numbers if you wish. Well, if they're included on page six- They're all on page six. So the testimony from the three witnesses, also the documentary evidence from M-Systems, and Western Digital, which we got through SanDisk, is also there, as well as public documents that were available. The physical disk-on-key USB device that we obtained through the subpoena. And then expert testimony from Mr. Guy, or going through- I have a recollection the district court said that you did a firmware upgrader demonstration at trial. Is that correct? Well, yes and no. No, we couldn't do a firmware upgrader demonstration because there were no servers out there anymore to do that. But the README file contains screenshots. And there was testimony from the witnesses about this. And they showed what screens you would have at each point in using the actual firmware upgrade. And that's a testimony-  Yes. And Dr. Rubin, who was IO Engine's expert, was cross-examined by me and answered a lot of questions about how going through those screens would, in fact, teach a person of ordinary skill in the art how to make and use the invention. Thank you. OK, thank you. That's all. Thank you, Your Honor. Mr. Leopold, it's 10 minutes. Thank you, Your Honor. So just working backwards. So all of what counsel was just talking about in terms of the estoppel issue, Judge, he said himself, it was the README file that they pointed to with particular screens. That README file, that was a document. That was a physical document. It was one of the documents that the court below on summary judgment found specifically that they had available to them at the time of the IPRs. I'm not understanding how it can be that an on-sale bar could be an estoppel issue with respect to the on-sale bar because some of the documents were used or could have been used in the IPR, even though there is additional requirements with respect to the on-sale bar. It's just not. There are issues with respect to on-sale bar that just are not addressed or considered by the commission, by the patent office. So I agree with that, Your Honor. But the issue here is that all of the evidence with respect to all of those points was something that was available to them at the time of the IPR. It was all documented evidence. They couldn't have introduced it. It would have been irrelevant. The question of whether the thing was on sale was irrelevant to the IPR proceeding, right? No, I don't agree with that, Your Honor. They could have put all of that. They could have made that exact argument in the IPR. How could you make the exact argument that it was embodied in something that was sold? By putting in the spreadsheets on the cells of the device, which is all they put in here. But why would that be germane? I mean, that's the point of the IPR, is that you can't do an on-sale bar. Well, you certainly can't do a physical device. You can put in a physical device. I agree with that. But they could have all of the documentation in our points. Let's put it this way. There are elements that are necessary to establish an on-sale bar defense. There are irrelevant to the IPR when you're dealing with a printed publication. I agree with that, Your Honor. But I think the point here is. The printed publication is used for an entirely different purpose at the IPR, right? It's in there to show that this is prior art, that it's been disclosed before. It has nothing to do whether it's been sold or used or. Certainly, that's correct. The evidence with respect to what's put in is to establish it as prior art. But that issue as to whether it is prior art or not is also the issue that was at issue in the district court proceeding, for which they relied entirely on documentary evidence, not anything other than. Documentary evidence to show that there was a physical product that was sold. Well, and I will say, Your Honor, that this is something that, with respect to the subpoena that he mentioned, that they only got these documents by subpoena. Those exact documents, that's what the district court had below on summary judgment and said, and I'm quoting from the district court at Appendix 115, Ingenico does not suggest any reason to believe that it could not have raised those documents in the IPR proceeding as well. Referring to the documents that we're talking about here, the firmware upgrade document, all of the documents describing the disk on key, all of the documentary evidence that they actually relied on at trial, the district court made a finding that they did not, that Ingenico did not suggest any reason to believe that it could not have raised those documents in the IPR proceeding. Once you cross that bridge that they could have raised all of those documents in the IPR proceeding, then they should have been a stopped on raising on that now, unless they made a substantively different case by virtue of putting in a physical device. I think we're out of time. OK, thank you. Thank all counsel. The case is submitted. Thank you, Your Honor.